Before we start, I want to just remind everybody how our lighting system works, which is our timing system. When the yellow light goes on, you'll have two minutes left. When the red light goes on, your time has expired. Of course, if we're asking you questions and your time has expired, we want you to answer those questions to the fullest of your ability. Otherwise, we want to ask that you please try to follow closely the guidelines because, as I said, we do have four cases on for today. And so we will hear first from Ms. Bhadrani. Good morning, Your Honors, and may it please the Court. Anju Bhadrani, Assistant Federal Public Defender, on behalf of the appellate Kevin McCall. The government agrees that the iCloud search warrant here failed to comply with the Fourth Amendment's foundational prohibition against general warrants and that it lacked particularity and it was overbroad. The question that remains before the Court, then, is whether such violations can continue with impunity. So I want to start by describing what this warrant actually authorized and why it was just so invasive. Nearly every phone today backs up to the cloud, which is basically a giant database that is accessible remotely via the Internet. And iPhones specifically back up to the iCloud, which is what was at issue in this case. This means that everything that has ever been on your phone or any device that connects or links to the iCloud account remains stored in the iCloud forever. Let me ask you a question about that. The iCloud account was created in January of 2020. The robbery was in April of 2020. Why is it the fact that there was such a short timeframe of the information that is loaded to the cloud? Why isn't that a short enough timeframe for the good faith exception? So when officers sought the warrant, they didn't actually know. I mean, it just happened to be that Mr. McCall's iCloud account was created in January, but it could have been created months, years, multiple years ago. And so the inquiry here focuses on what exactly is in the warrant itself. And in the warrant itself, there's absolutely no time limitation whatsoever, even though there is acknowledgement in the affidavit supporting the warrant, as well as in the suppression hearing testimony, that everyone believes that this was planned to spur of the moment, as in not pre-planned. And so going back months or even days at this point, there's really no probable cause to support doing so. What if, hypothetically, the warrant had a date restriction and it was January 1st, 2020 through the date of the robbery? Would that have been okay, everything else being the same? I don't believe so in this case, because the warrant sought every piece of information from the iCloud account that was possibly available and unlinked to the probable cause that officers had and what they were searching for in this case. It was just so broad in terms of the data that it was seeking because officers didn't know what they were looking for. And so it really was just a fishing expedition because they were looking for investigative leads, because what they really needed was the iPhone, which is where they knew perhaps messages and phone calls had been made from. And so a date restriction alone, especially going back to January. The iPhone. So not on probable cause, but on good faith. The fact that they had probable cause for the iPhone, how does that factor into whether we think that they were relying on this warrant in good faith for the iCloud? Right. This is not, I guess my point is, this is not a situation where they just went off and started trying to get people's electronic data. They had PC for the phone and the account is related to the phone. How should that factor in? Well, actually, I think the iPhone warrant is a good foil for the iCloud warrant in that the iPhone warrant does particularize the information. Yeah, no, no. I guess my point is, let's just assume we think there's no probable cause. Right. So relating it to the iCloud warrant, I think it goes to show you just how bad the iCloud warrant was, because in comparison, they knew how to do what they needed to do in terms of particularizing a warrant, but didn't do it with the iCloud and openly acknowledged in their iCloud warrant affidavit that they recognize that the iCloud backed up at least 12 hours prior to the incident that occurred and from the incident from which they were seeking the phone calls and the messages. So that's an acknowledgement that they know that they're not going to find what they're looking for in the iCloud and instead just asked for every piece of information that was available and then started rummaging through it. And so the iCloud warrant, the affidavit is just internally inconsistent. It's inconsistent with the testimony of the officer who wrote the warrant. And it just seeks everything because they didn't know what they were looking for. Another quick question on good faith. So some courts have suggested that when we're talking about technology and searches of technology like phones and clouds and whatnot, that we really should give officers some leeway under the good faith exception just because these things are relatively novel.  So I would say that in this circuit, we do have some guidance on what electronic search warrants should and should not have. And that's the United States v. Blake 2017 case very clearly lays out what makes a warrant constitutional and what makes a warrant problematic. And it's highly instructive to the facts of this case in that Detective Rosen should have known that at a minimum, a date restriction of some sort, some sort of data type restrictions, just some sort of restriction is required. And so your reference to Blake, I mean, so you see that as sort of dispositive. I've got to say, like, to me, the Blake case seems different in a couple of ways, not necessarily negative for you, but just different. I mean, in the Blake case, it was sort of ongoing criminal activity that they were investigating, right? It was the prostitution, right? Am I remembering that? Here, it's like a one-off thing. So that's different. But on the other hand, different, I think, in your favor. On the other hand, though, there was no link to sort of the iPhone thing. So it wasn't like, well, there's this physical device that we have PC to search, and then this account is linked to that. And so I just kind of wonder, does Blake – in what way do you think Blake most helps you? Blake most helps us because it does lay out what a search warrant needs to have, especially for electronic media, in order to make it compliant with the Fourth Amendment's particularity requirement. And in this case, there was information that officers could have sought in the warrant and put forth a more particularized warrant. There was information as to perhaps they could find a passcode if they looked in the notes app. Or if they wanted to search for firearms, they knew the caliber of the firearm they were searching for. If they were looking for particular individuals, they knew what they were wearing that night. If they were looking for specific cars or pictures of cars, they knew information about the cars that they were searching. Additionally, there were other investigative leads they could have followed. Because I understand what you're saying about the phone being linked to the iPad account. But they knew the iPad account wouldn't have the information they were looking for in terms of helping them to identify who the two armed robbers were. And so there were other investigative leads. I'm sure they could have followed. They could have tried to look at his social media accounts. Maybe they were public. Could have canvassed the area. There were just other things they could have done before first going to this incredibly broad search of this new iPad. Well, I guess you're telling us that there is just this limited world. We know who the other individuals who may or may not have been involved are. But why isn't it reasonable to look for broader than that? He's texting people. They may, in turn, have been texting people. He may have photographs of people. Why is all that information not relevant? It's not that it's not relevant. It's the way that the information is sought in the warrant. And in the warrant, it's just everything. So it's not just photos particularized to the individuals they might be looking for. It's not just messages particularized to communications that may bear on the communications that Mr. McCall had with those men that night. It's literally every piece of information in the iCloud. So your argument is that the Fourth Amendment requires sufficient particularity, and here we don't have it. Yes, exactly. And, in fact, the warrant was way overbroad, and what was asked for was not linked to the probable cause that the officers had. And that speaks to the overbreath of the warrant, because they were asking for information they really had no cause to ask for. And when you read the detective's testimony, it is very, it's possible we could have found that maybe this could have been, but that doesn't meet the high standard of probable cause. What do you do with the fact that we allowed the evidence in Blake to come in under the good faith exception, right? So, I mean, you've relied on Blake for your probable cause argument, but, I mean, at the end of the day, in Blake, we said, even though this was super broad and allowed all this information that Facebook had, we let it come in. So my first response to that is the warrant here is even more broad than the warrant at issue in Blake, in terms of the information that it sought, the acknowledgement from the officer that what he was looking for would not be found in the iCloud account. And at a minimum, Blake put everyone on notice. The holding pertained to the Microsoft warrants, but there was a compare and contrast done in Blake and paragraphs worth of compare and contrast done in Blake as to the reasoning for why the Microsoft warrants worked, but the Facebook warrants didn't work. And so that it was let in in Blake, I think, means that here officers were on notice. The particularity requirement in the Fourth Amendment itself is very clear. And so officers knew at a minimum what they needed to do and knew it because you saw how they did it in the iPhone warrants. So they know how to write a warrant. They just didn't do so as to the iCloud warrant in this case. Does Blake put the officers on notice that there needs to be a time restriction? I wouldn't say necessarily a time restriction. I think what Blake does is say to the officers, you need to make your warrant particular in terms of a mixture of restrictions that links what you're looking for to the probable cause that you have. There are no further questions. Thank you, Miss Petroni. It's reserved five minutes for rebuttal. Mr. Wu. Good morning, Jason, on behalf of the United States. The officer investigating this case acted in good faith. He obtained a search warrant from a neutral magistrate to examine McCall's iCloud account. Although the district court ultimately ruled that that warrant failed the Fourth Amendment's particularity requirement, those flaws were not glaring or obvious. And so exclusion is not the right remedy. The good faith exception is crafted for cases exactly like this one, when an officer makes a mistake in a fast-evolving field of law where no binding precedent dictates the right answer. And thus, this court should affirm. Let me ask you a question, if I could. It's maybe not exactly on point as the issues here, but we're going to have to write an opinion. And one of the areas that seems could bear some further clarification is what exactly is required to adequately particularize a warrant for electronic information from the iCloud or from a phone or whatever the case may be. And I wonder if you had some thoughts on that, because it seems to me that simply saying the crimes that you're looking for isn't really enough. I mean, sure, Your Honor. So two responses to that. The first is that this really is not the best case to issue that opinion because we haven't really fully joined issue on that. And the second response is that this is not the best case to issue that opinion because we haven't really fully joined issue on that. So recognizing that, just in general, I think we already have a rule. The rule is flexible and the rule accounts for, you know, the totality of the circumstances, which is that a warrant should be as particular as the facts and circumstances of each case dictate. So, of course, given that that's the overarching principle or legal rule that we're applying, it's going to require a case-by-case analysis. So I don't know that there's a- Well, that's true, of course. But I mean, that's not really much guidance. We just say, okay, make sure it's adequately particularized for your circumstances. I mean, are there some factors that might be considerations, for example, timeframes or different files that can be searched on the computer, different types of evidence that can be looked for? I mean, what would you say about that? Sure. You know, I think the Najad case that we cite in our briefs, although it's a district court opinion, does a good job of laying out some of the different what they call indicia of particularity, which are different ways that you can narrow a warrant that can help satisfy that part of the Fourth Amendment. So one of them is a time limit. I think Najad describes that as an indicia of particularity. So in cases where it's possible to impose a time limit restriction, I think that is preferable. And in fact, that is our standard practice in most warrants. The other way would be, secondly, particularizing it by the offenses that we're searching for, which is more the style of this warrant. I think that is a very significant way to do it, just because, again, it's very hard to describe what would be evidence of a robbery on a phone. We know it could be communications about planning the robbery, but it could also be, you know, earlier communications just indicating a willingness to commit a violent crime together. It could be communications about exchanging firearms. It could be, as we found here, pictures of firearms, which suggests that the person had access to the tools that were used potentially could have been the ones used in the robbery. So, you know, again, that's another indicia of particularity is that you describe the offenses that you're searching for. Here's what I'm struggling with. We know that certainly that there was no time limit, and it does seem to be a very broad phishing expedition. I'm not sure what the limits are on the information that was being sought from the iCloud account. So what are the things that we can point to to show that the officer's reliance on the warrant was objectively reasonable? Sure. So I want to make sure I understand. Are we talking about I guess there's kind of the two steps to this analysis. The first step, as I understand it from this court's case law, is you look at whether it fits within one of those four carve outs to the good faith exception. And then we're only looking at the face of the warrant. And of course, at step two, we just ask this overarching question about whether the officers reasonably relied on the warrant. And there you can look kind of beyond the four corners of the warrant into the record as laid out in the evidentiary hearing. So I just want to make sure. Are we talking about are we on step one or step two? Step two. So in step two, actually, this goes back to a question that Judge Brasher asked my colleague, which is how do we evaluate the fact that this officer got the iPhone warrant first? And I think what that shows you is that this was a good faith, reasonable effort not to do more than was necessary to advance this investigation. So it started out with the iPhone warrant because the iPhone would more directly have evidence of the crime at issue. When we realized or when this officer realized he could not get the most direct evidence of the robbery, he said, well, I think I still have probable cause to search the iCloud for a more general universe of information. And what he was looking for is, is there an indirect way that I can identify Mr. McCall's accomplices? And so, again, the fact that he took those steps in that sequence, to me, bears highly on his good faith, as does the fact that he took such a careful and conscientious process to create the warrant, even recognizing that he fell short in the end. So the fact that because he had not had extensive experience writing electronic search warrant affidavits before, he sought guidance from fellow officers, from a supervisor, from Mr. Kemp Vennie, who was a sort of a digital forensic specialist with the Broward County Sheriff's. And of course, it was cleared through a state attorney before hitting the judge's desk. All those things suggest that this is an officer who's trying his very best. And he even testified at the hearing. The reason he was asking all these people those questions is because he wanted to make sure he got it right. So, again, those all bear at step two on his reasonable reliance on the warrant and the good faith in which he engaged in this process. Could you address an issue that I raised with your friend on the other side about technology? So some courts, mainly district courts, have suggested that when you're talking about searches of sort of evolving technology, that that is an area where the good faith exception to the warrant requirement has sort of like a robust application. Why do you think about that? I absolutely agree with that. And, you know, to allay some concern that I think my friend on the other side was was presenting, that's not going to last forever. Judge Brasher, the case along this area is going to continue to develop. Right. We had Blake in 2017. Actually, Ms. Bedrani and I argued a similar case named Obagbaraye, which some members of the panel may remember, just last year. And again, now we have McCall. So the fact is these claims are being raised frequently. They're being litigated throughout the country. And so in five years, 10 years, however many years time, there are going to ultimately be clearer pieces of guidance from this court or the Supreme Court on what's allowed in this realm right now, because this is kind of an immature area of law. There is a wide range of reasonable beliefs as to what these warrants require. Those are reflected in the diversity of opinions currently at the district court level. And so the good faith exception has to be broad, because as long as we're acting reasonably within that universe, we are entitled, in our view, to the benefit of the good faith exception. So I've been kind of looking for a physical analog to the iCloud, iPhone relationship. Let me just give you a potential analog and see if you think this is right or wrong. So would this be sort of like getting a warrant to search someone's, you know, shed or something in their backyard, and then finding it inaccessible for whatever reason and saying, well, I'm going to warrant to search their house? Is that comparable to the iPhone iCloud connection? Quite frankly, I thought about it. It's difficult to come up with a physical analogy because it's a backup system, right? I think ultimately, you know, without trying to analogize this, what we were really trying to do to put it in common sense terms is we wanted the phone. And I think the thing that we wanted most on the phone, of course, were the messages from April 11th. But failing that, you know, as the original iPhone warrant says, we also wanted messages that would relate to motive, pre-planning, execution of the offense, including prior communications or notes. So we couldn't get any of that from the iPhone. So then when we went to the iCloud, what we really wanted was essentially a backup of the iPhone. That's not to get a more expansive universe of data. It's actually kind of to get an inferior version of what we could have seized with the first warrant. It's a narrower subset because it's an impartial, incomplete backup from the day before. But what we could still find there, even though we wouldn't find the April 11th messages, would be any messages before that that suggested McCall had accomplices or people that he had discussed either violent crimes or robbery with before. And again, that rests on a pretty common sense inference, which is I think it's hard to imagine that a person could invite two others to accomplish a violent robbery and attempted murder just on a split second basis like that. So we had to come up with no belief or no prior communications to suggest those people were willing to engage in violence. So again, although that's a weaker inference than, look, April 11th phone was used. We can get the April 11th messages from the phone. That's still a plausible, probable cause showing. And again, that's what we were going for in that second warrant. Well, I have one more question for you. So if one issue that's sort of interesting to me in this case is the question of whether you needed a warrant to get the information from the iCloud account at all. As I understand, the iCloud account is held by Apple or some third party. Are you familiar with, I want to guess, the law on this generally? It's my understanding this is being litigated and has not been resolved in the circuit. And two, what the United States' position is on whether you even need warrants to get this kind of information. I have to admit, Judge Brasher, I have not looked thoroughly at that, so I don't want to get over my skis. In general, I'll say what our practice is, which is with these third party providers, we do seek a warrant for things like Facebook data, Gmail or Google email or any type of email account. And it strikes me that the iCloud is very analogous. It's a disclosure to a third party. So I could see there being a legal argument that it's not protected under the Fourth Amendment. But it seems, again, you can analogize it to like saying you rent an apartment, so you don't own it, but you have some interest over it. But I admit I haven't thought that through fully. I have a question for you. So in this case, as I understand it, while they were looking through the photos for evidence of the armed robbery, I guess, or the assault, they found a picture of Mr. McCall with a firearm, right? Yes. Video and a picture, yeah. Pardon? I think it was a video and several photographs. Okay. But the point is that it was at that point that they began the investigation to determine whether he was a felon in possession, right? Correct. So they did not know when they saw the picture that he was a felon, right? Yes. I think the officer testified that he had looked at Mr. McCall's arrest record and did see a high number of arrests, but had not looked at his criminal history to confirm those matured into convictions. So then was it really evidence at that point that a crime had been committed? In other words, was it really plain view of a crime since the officer didn't know at the time that he saw the photograph that Mr. McCall was a convicted felon? Two points there, Your Honor. The first is that it could already be seized as evidence related to the robbery because the robbery was committed via firearms. So the fact that McCall may have possessed firearms is relevant to whether he might have been a felon. But is it? I mean, was it the same firearm or the same kind of firearm? It was a nine millimeter firearm and the guns used, at least some of the gun, one of the guns used by the robbers was a nine millimeter firearm, which could very well suggest that they borrowed it from McCall. You know, that would have been the point of his communications. Tell them, go to my house, grab my nine and let's do this. So that's point number one. I think it could have been evidence of the robbery. Point number two is that I think for plain view, of course, you don't need to be absolutely assured that it's evidence of a crime. You need to have some reasonable cause to believe that once you see it in plain view. And again, the fact that the officer knew that McCall had such a high number of arrests for felony charges, combined with the fact that he now sees these guns on his phone already gave him enough to seize it for those purposes. Thank you. If there are no further questions, thank you for your time. We respectfully request this court affirm Mr. McCall's convictions. Thank you, Mr. Wu. Ms. Boudrani, you have five minutes of rebuttal time. Judge Rosenbaum, I want to quickly address your question to Mr. Wu about the firearms that were discovered in the phone. When Detective Rosa was testifying, he noted that the photos were just stumbled upon and very clearly noted that there was never any indication. No one ever believed that Mr. McCall was in possession of a firearm the night of the offense. And the warrant itself doesn't particularize the type of firearm they're looking for, though they did have ballistics on the firearm, noting that it was potentially a nine millimeter that was used. The warrant just says semi-automatic, or I think it just says guns. So there's, again, there's just nothing in the warrant to guide the search that occurred here. And then as to the question of what needs to be in a warrant or like how this process could work with electronic media, I think the forensic unit supervisor's testimony helps on that front because in this case we do have testimony that law enforcement is capable of limiting the data received from Apple. Let's assume for the purposes of this case that Apple's not capable of limiting the data they send over. Law enforcement is, and so they can limit the data by type, by date, potentially by subject matter. And so there was the ability here to ask specifically for, we want to look at photos from this time period to this time period, or we want to read through messages and attachments from this time period to this time period. And everyone's acknowledging that that's a capability of law enforcement, but this warrant does none of that. It has no restrictions whatsoever. And what Detective Rosen did here was say, in my law enforcement training, crime is often pre-planned. And that is the only addition, and he says this in his testimony, that that is the only addition to the iCloud search warrant that separates it from the iPhone warrant. There's no additional facts. There's none of what Mr. Wu was talking about in terms of what they hoped they could maybe discover in the iCloud. None of that existed in this case. And so the position here is, at minimum, this court in Blake laid out very minimally what is required of an electronic search warrant. And this warrant falls so far below what even Blake talked about that there's no way that any reasonable officer could have thought that this was a valid search warrant for the iCloud account in this case. And so if there are no further questions, we would just ask that you... Let me just ask you to address the question I asked Mr. Wu, which is just, what's the case law and whether they needed a warrant? I mean, you would obviously argue they do, but is that established somewhere? I don't believe so, but I think there are good analogs and other third-party devices. And in terms of iClouds and cloud storage, it's usually password protected, usually paying for the space that you're using. There is a realm of privacy that surrounds the data in your phone and then what you store in the cloud, what's on your phone is in the cloud. But if not more, it's arguably even more of a privacy intrusion to get into the cloud because you can find so much more in there than you would potentially find in a home. And so, again, like Mr. Wu, I haven't looked at this issue in detail, but my understanding is that there is certainly an expectation of privacy in what's stored in the cloud. And so, our position here is that Blake put everyone on notice and this warrant fell far below what Blake authorized. And if this court is wanting to find that Blake didn't do that, at a minimum, the Fourth Amendment violation here is very clear. And there does seem to be some conflict among the cases here, and so if the court were to clearly establish the law in this case, it's also necessary in this area. The law, it's been years, 2017 was almost six years ago, and these warrants are more and more common, and so there needs to be some guidance. But in this case, this warrant, very clearly below any standard. And so, we would ask that the suppression motion be granted. Thank you, counsel. Thank you both. Well argued on both sides. All right, our next.